# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| SHERI M. ALBERTS, | ) | Case No. 07-25703-JAD |
| | ) | |
| Debtor. | ) | Chapter 13 |
| | ) | |
| _____ X | | |
| | ) | |
| HOUSING AUTHORITY OF | ) | |
| BEAVER COUNTY, | ) | |
| | ) | |
| Movant, | ) | Related To Document Nos. |
| | ) | 17 & 26 |
| vs. | ) | |
| | ) | |
| SHERI M. ALBERTS, and | ) | |
| RONDA J. WINNECOUR, CHAPTER | ) | |
| 13 TRUSTEE, | ) | |
| | ) | |
| Respondents. | ) | |
| _____ X | | |

Appearances:    Kimberly Motley-Phillips, Esq., Eileen D. Yacknin, Esq., and
Daniel L. Haller, Esq. for the Debtor
Mark A. Lindsay, Esq., for Housing Authority Of Beaver
County

## **MEMORANDUM OPINION**

This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052. There are two matters before the Court, each raising similar issues. These two matters consist of a motion filed by the Housing Authority of Beaver County captioned as a "Motion

For Order Determining Automatic Stay Ineffective As To Movant, If Applicable, Or In The Alternative, For Relief From The Automatic Stay" (the "Motion for Relief From Stay") and a motion filed by the Debtor, Sheri M. Alberts, captioned as a "Motion For Contempt For Violation Of Automatic Stay "(the "Motion for Contempt"). These matters are core proceedings pursuant to 28 U.S.C. §§ 157(b)(2)(A), (G) and (O).

Pursuant to the Motion for Relief From Stay, the Housing Authority Of Beaver County ("Housing Authority") asks that this Court find that the automatic stay is ineffective as to the Housing Authority due to a pre-bankruptcy judgment for possession entered in its favor before one of Pennsylvania's Magisterial District Courts. In its motion, the Housing Authority contends that its post-petition efforts to enforce the judgment for possession are not stayed by operation of 11 U.S.C.§ 362(b)(22).

The Debtor has opposed the relief requested by the Housing Authority. Also, by way of the Motion for Contempt, the Debtor argues that the alleged judgment for possession entered by the Magisterial District Court is not a "judgment for possession" for purposes of 11 U.S.C. § 362(b)(22). As a result, the Debtor asks that this Court find that the Housing Authority and its attorney violated the automatic stay by continuing to prosecute proceedings to enforce the alleged judgment for possession after the commencement of this bankruptcy case. For reasons set forth more fully in this Memorandum Opinion, the Court hereby concludes that the automatic stay does enjoin the collection efforts of the Housing

Authority and, as a result, denies the Motion for Relief From Stay. The Court also denies the Debtor's Motion for Contempt without prejudice at this time.

**I.**

The facts of this case are generally not in dispute. This case was originally commenced by the Debtor, Sheri M. Alberts, filing a voluntary petition under Chapter 7 of the United States Bankruptcy Code ("the Code") on September 10, 2007.[1] (Docket No. 1). By order dated October 22, 2007, this case was converted to a Chapter 13 pursuant to 11 U.S.C. §706(a). (Docket No. 21).

Prior to the bankruptcy, on or about September 22, 2006, the Housing Authority and the Debtor entered into a Residential Lease Agreement ("Lease") for certain residential real property known as 1145 8th Avenue, Freedom, Pennsylvania 15042 ("Premises"). (Docket No. 17, Exhibit A). The Premises is federally-subsidized public housing development operated by the Housing Authority and is generally known as the Freedom Family Development. (Docket No. 26, Paragraph 2).

On December 13, 2006, a complaint was lodged in Magisterial District No. 36-2-01 by the Housing Authority against the Debtor alleging both monetary and non-monetary violations of the Lease including, *inter alia*, nonpayment of rent. Specifically, the Housing Authority alleged that the Debtor had committed

---

[1] This case was originally assigned to the Honorable M. Bruce McCullough. By Order dated October 22, 2007, this case was transferred to the undersigned Bankruptcy Judge.

violations of sections 3A, 9E, 9F, and 9O of the lease.[2] (Docket No. 17, Exhibits A & B). The complaint was adjudicated and Magisterial District Judge Edward Howe entered a judgment in favor of the Housing Authority on December 22, 2006.[3] (Docket No. 17, Exhibit C). Pursuant to the judgment, the Housing Authority was awarded rent in arrears as well as attorney fees for a total of $190.49 and possession of the property.[4] (*Id.*)

A notice of appeal was timely filed by the Debtor on or about January 2, 2007 with the Court of Common Pleas of Beaver County ("Court of Common Pleas"). (Docket No. 17, Paragraph 5). On January 17, 2007, and pursuant to a rule to show cause issued by the Court of Common Pleas, the Housing Authority filed a new complaint in the Court of Common Pleas. (Docket No. 45, Paragraph 8). The Court of Common Pleas subsequently set a trial date of October 25, 2007 on the Housing Authority's complaint. However, prior to the trial in state court the Debtor filed for bankruptcy on September 10, 2007. (*Id.* at Paragraph 9).

After the bankruptcy was filed, the Housing Authority by and through its corporate counsel forwarded to the Debtor on September 10, 2007, a letter notifying her of the Housing Authority's intent to present a Motion to Amend the

---

[2] The non payment of rent is specified as violating Section 3A of the lease in the complaint. Section 9O refers to the landlord's pet policy. However, the lease provided is of poor quality, and Sections 9E and 9F are illegible.

[3] The Notice of Judgment/Transcript indicates that the date of Judgment in favor of the landlord was December 21, 2006, but it was not signed and dated by District Judge Howe until December 22, 2006.

[4] The total rent in arrears was $88.20 and the Attorney Fees were $102.29.

state court complaint to add claims for additional breaches of the Lease. (Docket No. 26, Paragraph 10). The Housing Authority did so in the absence of actual knowledge of the filing of the bankruptcy petition by the Debtor. *Id.* On the same day, counsel for the Housing Authority filed a "Motion For Leave To File Amended Complaint" electronically with the Court of Common Pleas. (Docket No. 45, Paragraph 15). Two days later, the Debtor by and through her counsel filed a "Suggestion of Bankruptcy" in the Court of Common Pleas and served the same upon counsel to the Housing Authority. (Docket No. 26, Paragraphs 12 & 13). On September 19, 2007, an order was signed by Judge Thomas C. Mannix in the Court of Common Pleas granting the Housing Authority's motion to amend, despite the Debtor's filing of the Suggestion of Bankruptcy. (*Id.* at Paragraph 17).

The Debtor took issue with the Housing Authority's continuation of the state court litigation without leave of this Court. On October 16, 2007, and as a prophylactic measure, the Housing Authority filed with this Court its Motion for Relief From Stay. Two days later, on October 18, 2007, the Housing Authority filed a motion requesting that the Court of Common Pleas continue the proceedings before that court indefinitely until the issues concerning the applicability of the automatic stay were resolved by this Court. (Docket No. 45, Paragraph 19). Thereafter, on October 24, 2007, the Debtor filed her Motion for Contempt which, in essence, asks that the Court sanction the Housing Authority for allegedly violating the automatic stay. On November 21, 2007, the Court held a hearing on the dueling motions of the parties, and at such hearing much of the

facts set forth in this Memorandum Opinion were stipulated to, or admitted by the parties.  This matter is now ripe for the Court's determination.

## II.

A fundamental protection afforded by the Code is the "automatic stay," which originates by application of 11 U.S.C. § 362(a).  In re Williams, 371 B.R. 102 (Bankr. E.D.Pa. 2007).  The "automatic stay" is a statutory injunction arising upon the commencement of the case; and the injunction is "automatic" in that it arises without the necessity of a formal court order.

The automatic stay "is designed to effect an immediate freeze of the *status quo* . . . and protects the debtor by allowing it breathing space and also protects creditors as a class from the possibility that one creditor will obtain payment on its claims to the detriment of all others." Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n, 997 F.2d 581, 585 (9th Cir. 1993) (citing Interstate Commerce Comm'n v. Holmes Transp., Inc., 931 F.2d 984, 987 (1st Cir. 1991), vacated, 983 F.2d 1122 (1st Cir. 1993) and Treasurer of Snohomish Cty., Wash. v. Seattle First Nat'l Bank (In re Glasply Marine Indus.), 971 F.2d 391, 394-95 (9th Cir. 1992)). The automatic stay is an important and powerful bankruptcy remedy in that it precludes certain post-petition actions of creditors, including the efforts of creditors to obtain property of the debtor or property of the bankruptcy estate. See 11 U.S.C. §§ 362(a)(1),(2), (3), (4), (5), and (6).

In 2005, Congress passed the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") in which Congress crafted new exceptions to the

automatic stay. One such exception put in place by Congress is found at 11 U.S.C. § 362(b)(22), which allows for the continuation of eviction proceedings in instances where a landlord has obtained a pre-petition judgment for possession of residential real property. Specifically, 11 U.S.C. § 362(b)(22) states, in pertinent part, as follows:

> The filing of a petition...does not operate as a stay . . . of the continuation of any eviction, unlawful detainer action, or similar proceeding by a lessor against a debtor involving residential property in which the debtor resides as a tenant under a lease or rental agreement and with respect to which the lessor has obtained before the date of the filing of the bankruptcy petition, a judgment for possession of such property against the debtor

11 U.S.C. § 362(b)(22).[5]

The application of this statute appears to be simple. A fair reading of the statute is that in order for the § 362(b)(22) exception to apply, the only act that the landlord must complete before the bankruptcy case is commenced is the obtainment of a pre-petition judgment for possession of residential real property. The Debtor in this case, however, contends that the "judgment" obtained by the Housing Authority before the Magisterial District Court is nothing but a "nullity"

---

[5] The exception to the automatic stay found in 11 U.S.C.§ 362(b)(22) is subject to the provisions of 11 U.S.C. §362(l). Section 362(l) of the Code operates as a safe harbour precluding the termination of the stay in instances where (i) the judgment for possession was obtained as a result of monetary defaults of the debtor, (ii) the debtor is able to cure the entire monetary defaults under applicable nonbankruptcy law, (iii) the debtor has, within 30 days of the petition date, filed and served a certification setting forth the debtor's cure rights, and (iv) the debtor has, within 30 days of the petition date, deposited with the clerk the rent due for the 30 days after the petition is filed. 11 U.S.C. §362(l)(1). In the matter *sub judice* it undisputed that the requirements of § 362(l) were not followed by the Debtor in order to override the exception to the automatic stay provided for in § 362(b)(22). Thus, the sole issue for the Court is whether 11 U.S.C. § 362(b)(22) has been implicated in the first instance.

by virtue of the fact that the "judgment" is currently subject to a *de novo* appeal to the Court of Common Pleas of Beaver County. The Debtor therefore asks that this Court to conclude that the document signed by the Magisterial District Court is not a "judgment" for possession for purposes of 11 U.S.C. § 362(b)(22).

### III.

When interpreting any statute, it is imperative for the Court to begin with the existing statutory text. Lamie v. United States Trustee, 540 U.S. 526, 534, 124 S.Ct. 1023, 1030 (2004). *See also* BP America Production Co. v. Burton, ___ U.S. ___, ___, 127 S.Ct. 638, 644 (2006). "Unless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning." BP America Production, ___ U.S. at ___, 127 S.Ct. at 643 (citing Perrin v. United States, 444 U.S. 37, 42, 100 S.Ct. 311, 314 (1979)).

Congress has not defined the term "judgment" anywhere in the Code, let alone within 11 U.S.C. § 362(b)(22). However, the United States Supreme Court has held that "where Congress uses terms that have accumulated settled meaning under…the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of those terms." Field v. Mans, 516 U.S. 59, 69, 116 S.Ct. 437, 443 (1995) (internal quotation marks omitted) (citing Community for Creative Non-Violence v. Reid, 490 U.S. 730, 739, 109 S.Ct. 2166, 2172 (1989) (quoting NLRB v. Amax Coal Co., 453 U.S. 322, 329,

101 S.Ct. 2789, 2794 (1981))).[6]

The word "judgment" is a legal term of art. Black's Law Dictionary defines the term "judgment" as "[a] court's *final* determination of the rights and obligations of the parties in a case." Black's Law Dictionary (8th ed. 2004) (emphasis added).[7] Thus, according to Black's Law Dictionary, finality is a key component to any court order having the legal effect of a binding judgment.[8]

In some rare instances, due to statutory provisions affecting the standard of review on appeal, certain orders entered by some courts lose their requisite degree of firmness once an appeal is perfected and, as a result, the lower court order becomes nothing more than a nullity. One such narrow instance occurs when a judgment is subject to *de novo* review, which is nothing but a legal

---

[6] In Field, the Supreme Court was faced with determining the level of reliance for "actual fraud" as it is used in 11 U.S.C. §523(a)(2)(A). In so doing, they stated that "there is no reason to doubt Congress's intent to adopt a common-law understanding of the terms it used," and looked at how "actual fraud" was understood in 1978 when that language was adopted into the Code. *Id.*, at 70. To come to their ultimate holding that "actual fraud" only requires justifiable reliance and not reasonableness as determined by the Bankruptcy Court, the Supreme Court took into consideration secondary sources, including, *inter alia*, the Restatement Second of Torts.

[7] The United States Supreme Court often uses dictionaries as a source of interpreting terms of art used in statutes. *See e.g.*, Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't of Health and Human Resources, 532 U.S. 598, 603, 121 S.Ct. 1835, 1839 (2001) (adopting Black's Law Dictionary definition of the term "prevailing party" as the clear meaning of the term); Branch v. Smith, 538 U.S. 254, 264, 123 S.Ct. 1429, 1437 (2003) (defining the term "enactment" using both Black's Law Dictionary and Webster's Dictionary).

[8] *See also* Restatement (Second) of Judgments § 13 cmt. a, (1982) (stating that the requirement of finality to the enforcement of any judgment "makes the general commonsense point that such conclusive carry-over effect should not be accorded a judgment which is considered merely tentative in the very action in which it was rendered. On the contrary, the judgment must ordinarily be a firm and stable one, the 'last word' of the rendering court – a 'final' judgment.").

"Mulligan" or "do over" for the litigants in a different forum.[9] *See* Felton v. Weyman, 10 Pa. 70 (1848) ("It was settled in Hastings v. Lolough, 7 W[atts] 540 [(Pa 1838)], that a transcript of a judgment, which had been appealed from, could not be filed in the Common Pleas, to create a lien on the defendant's real estate, if the appeal had been duly taken and perfected; 'because,' says Mr. Justice Kennedy, 'the common and ordinary effect of an appeal is to open and annul the judgment entirely, so that the plaintiff proceeds, *de novo,* and is bound to make out his case in the same manner as if no judgment had been rendered in his favour.'"); *See also* Belber v. Belber, ___ A.2d. ___, ___, 6 Pa.Super. 361, 363 (Pa. Super. 1897) (speaking on the effect of an appeal *de novo* the court stated that "[i]t will hardly be seriously contended that the taking and filing the appeal did not ipso facto annul the judgment.").

In the case now before the Court, it appears that Ms. Alberts timely lodged her appeal of the District Magistrate Court's order for possession, giving rise to *de novo* review by the Court of Common Pleas of Beaver County. Under such circumstances, this Court concludes that there was no recognizable "judgment" for purposes of 11 U.S.C. § 362(b)(22) in place as of the petition date. As a result, the exception to the automatic stay cited by the Housing Authority has no

---

[9] *See* Restatement (Second) of Judgments § 13, cmt. f, (stating "...a judgment otherwise final remains so despite the taking of an appeal *unless what is called an appeal actually consists of a trial de novo.*") (emphasis added); *see also* the Alternative Dispute Resolution Act of 1998 28 U.S.C. § 657(c)(2) (indicating that "[u]pon a demand for a trial de novo, the action shall be restored to the docket of the court and treated for all purposes as if it had not been referred to arbitration.")

application in this case and the Motion for Relief From Stay will be denied by the Court on this basis.

### IV.

In this case, it is undisputed that the Debtor timely perfected an appeal of the order for possession entered by the Magisterial District Court. There also is no dispute that the Pennsylvania Rules of Civil Procedure accord a *de novo* standard of review of those proceedings. *See* Pa. R.C.P.M.D.J. No. 1007. According litigants *de novo* review with respect to landlord/tenant appeals is consistent with due process because debtor practice in District Magistrate Courts are largely *pro se* where there is no official record taken. In addition, debtor/lessees have a constitutional right to a trial by jury. Pa. Const. Art. 1, § 6; U.S. Const. Amends. VII, XIV. Such trials, under Pennsylvania practice, do not occur in the Magisterial District Courts but rather in the Court of Common Pleas.

The Housing Authority nonetheless minimizes the protections afforded by *de novo* appeals to debtor/lessees and suggests that the Housing Authority should be able to march on with respect to its litigation without leave of this Court. The Court declines to provide the Housing Authority with such a free hand.

Courts have held that exceptions to the automatic stay should be read narrowly. *See e.g.*, Hillis Motors, 997 F.2d at 590; Stringer v. Huet (In re Stringer), 847 F.2d 549, 552 (9th Cir. 1988); *see also* King *et al.*, 3 Collier on Bankruptcy ¶ 362.05, (rev. 15th ed. 2006). This Court's interpretation of the word "judgment" (i.e., to require a requisite degree of firmness in the court order at issue for it to

rise to the level of a judgment) is consistent with this precept of statutory construction.

This Court's interpretation of the word "judgment" is also consistent with Pennsylvania case law. For example, the Pennsylvania Superior Court has indicated that upon the perfection of a *de novo* appeal, Rule 1007 of the Pennsylvania Rules of Civil Procedure for Magisterial District Judges has the effect of extinguishing and nullifying the underlying judgment. *See* Independent Technical Services v. Campo's Express, Inc., 812 A.2d 1238, 1241, 2002 Pa.Super. 374, ¶9 (Pa. Super. 2002) ("we conclude that judgment entered at the magistrate level was nullified by the perfection of the appeal *de novo*..."); *see also* Anderson v. Centennial Homes, Inc., 594 A.2d 737, 740, 406 Pa.Super. 513, 519 (Pa. Super. 1991) ("Clearly, since the case is tried *de novo* in the court of common pleas, the effect...is to suspend the effect of the default judgment entered by the district justice."). It would thus appear that the current state of the law in Pennsylvania is that once an appeal is perfected from a Magisterial District Judge, the order from which the appeal has been taken no longer has the requisite degree of finality that is necessary for the order or decree to constitute a "judgment" as a result of the *de novo* proceeding on appeal.[10]

---

[10] This Court's conclusion is congruent with the leading authoritative treatise in bankruptcy which states that:

> Since the stay exception under subsection [11 U.S.C. § 362](b)(22) is based on the existence of a prepetition judgment for possession, it should not apply if the judgment for possession has been vacated or is no longer valid under applicable

(continued...)

As further support of this Court's conclusion that an appeal *de novo* nullifies the judgment of the District Magistrate, the Pennsylvania Supreme Court has spoken on the effect an appeal *de novo* has upon a compulsory arbitration award.[11]  Specifically, in <u>Weber v. Lynch</u>, 375 A.2d 1278 (Pa. 1977), the Pennsylvania Supreme Court concluded that once an appeal is perfected, a compulsory arbitration award is not really a judgment because the appellant is entitled to a trial *de novo. Id.* at 1282.  This Court sees no reason why the Pennsylvania Supreme Court's decision in <u>Weber</u> should not apply with respect to the order for possession entered against the Debtor, Ms. Alberts, in this case.  That is, the Magistrate District Court's order does not operate as a "judgment" *per se* for purposes of 11 U.S.C. § 362(b)(22) until such time as either the appeal is discontinued or the landlord prevails at the Court of Common Pleas level.[12]

---

[10](...continued)
  nonbankruptcy law at the time the petition is filed.  This could
  occur...if the judgment for possession has been appealed
  prepetition and the effect of the appeal under applicable
  nonbankruptcy law is that the judgment is vacated pending a *de
  novo* trial or other proceeding on appeal.

3 <u>Collier on Bankruptcy</u> ¶3-362.05[20], (rev. 15th ed. 2006).

[11] In some Pennsylvania courts, small claims commenced in the Court of Common Pleas are referred to compulsory arbitration. *See* 42 Pa.C.S. § 7361; Pa.R.C.P. 1301 et seq.  A litigant dissatisfied with the arbitration award may appeal the decision of the arbitrators to the Court of Common Pleas, which conducts a trial *de novo. See* Pa.R.C.P. 1311.

[12] While the judgment or order for possession loses some of its luster because of the *de novo* appeal, the Pennsylvania Rules of Civil Procedure do afford a landlord some rights under state law in the absence of a bankruptcy. *See* Pa.R.C.P.M.D.J. No. 1008 (stating that the lodging of an appeal acts as a supersedeas only if appellant delivers certain rental amounts to the prothonotary).  However, once a bankruptcy case is filed, the automatic stay provisions of the Bankruptcy Code preempt applicable non-bankruptcy law and enjoin the efforts of the landlord to evict the tenant absent relief from the automatic stay.  Regardless, this Court notes
(continued...)

Accordingly, 11 U.S.C. § 362(b)22) is not applicable in this instance.

## V.

In rendering its decision today, the Court is mindful of the Housing Authority's concern that some tenants may abusively file for bankruptcy protection in order to retain possession of the leased premises and circumvent their obligation to deposit rents with the prothonotary during the pendency of a *de novo* appeal.[13] This Court's experience, however, is that most debtors petitioning for relief in the Western District of Pennsylvania are honest, hard working people who truly need a fresh start. If landlords, such as the Housing Authority, believe that their interests are not being adequately protected, they can petition the Court for redress. Such redress can include: a request for adequate protection, *see* 11 U.S.C. § 361; a request for relief from the automatic stay, *see* 11 U.S.C. § 362(d); a request to compel the immediate assumption or rejection of the lease, *see* 11 U.S.C.§365(d); and a request to dismiss the case for cause shown, *see* 11 U.S.C. § 1307(c).

In fact, in connection with the Housing Authority's motion, the Housing Authority has requested relief from the automatic stay citing lack of adequate protection, contending that the Debtor lacks equity in the Premises, and suggests that the property at issue is not necessary for an effective reorganization. *See* 11

---

[12](...continued)
that counsel has advised the Court that Ms. Alberts had apparently paid the supersedeas deposits up and until the bankruptcy filing.

[13] *See* Footnote 12 and the Pennsylvania rule of procedure cited therein.

U.S.C. §§ 362(d)(1) and (2).[14]  The Court does not find the Housing Authority's motion to be persuasive.

The record in this case is that while the Housing Authority's motion was originally filed while the Debtor was seeking protection under Chapter 7 of the Code, the Debtor has since converted the case to a Chapter 13 (Docket No. 21); provided for payments of monthly rent to Housing Authority in her Chapter 13 Plan in the amount of $190.00 per month (Docket No. 37); and has had her Plan approved by the Court on an interim basis (Docket No. 55).

The Housing Authority appears to be adequately protected by the periodic payments provided for it under the Chapter 13 Plan, and the Housing Authority has offered no evidence indicating that the Debtor has not been tendering plan payments.

In addition, while the Debtor lacks any equity in the Premises because she leases it from the Housing Authority, it would be illogical to argue that the

---

[14] 11 U.S.C. §§ 362(d)(1) and (2) states, in pertinent part, as follows:

> On request of a party in interest and after notice and hearing, the court shall grant relief from the stay . . .-
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if-
>
>> (A) the debtor does not have an[y] equity in such property; and
>>
>> (B) such property is not necessary to an effective reorganization; . . .

debtor's residence is not "necessary to an effective reorganization." The Court reaches this conclusion because the Debtor is a single mother raising two minor children,[15] and they certainly need their home to complete this case.

Moreover, there is a presumption in personal bankruptcies that a chapter 13 debtor's residence is necessary for an effective reorganization when the purpose of filing for Chapter 13 is to retain possession of the debtor's home. Grundy Nat'l Bank v. Stiltner, 58 B.R. 593, 596 (W.D.Va. 1986). As a result, the state of the record is such that the Court must deny the Motion for Relief From Stay.

## VI.

Lastly, the Court is asked to consider the Debtor's Motion for Contempt. In her papers, the Debtor has suggested that the Housing Authority should be sanctioned for amending its complaint in the Court of Common Pleas after the commencement of this bankruptcy case. Counsel for the Debtor, however, has withdrawn her request for monetary sanctions and instead asks this Court to merely enter an order that "vacates" the amended complaint. However, because it appears that no substantive affirmative relief was entered against the Debtor in the Court of Common Pleas, and because it appears that the Housing Authority has agreed to continue the state court proceedings generally during the pendency of the stay, the Court sees no need to disrupt the record of the state court at this time. The Court will therefore deny the Debtor's Motion for Contempt without prejudice.

---

[15] *See* schedule I (Docket No. 1).

**VII.**

For all of the foregoing reasons, the Court will enter an Order which (a) denies the Motion for Relief From Stay filed by the Housing Authority, and (b) denies the Motion for Contempt filed by the Debtor.


January 24, 2008                    /s/ Jeffery A. Deller
                                    Jeffery A. Deller
                                    United States Bankruptcy Judge

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| SHERI M. ALBERTS, | ) | Case No. 07-25703-JAD |
| | ) | |
| Debtor. | ) | Chapter 13 |
| | ) | |
| _____ X | | |
| | ) | |
| HOUSING AUTHORITY OF | ) | |
| BEAVER COUNTY, | ) | |
| | ) | |
| Movant, | ) | Related To Document Nos. 17 & 26 |
| | ) | |
| vs. | ) | |
| | ) | |
| SHERI M. ALBERTS, and | ) | |
| RONDA J. WINNECOUR, CHAPTER | ) | |
| 13 TRUSTEE | ) | |
| _____ X | | |

**ORDER OF COURT**

**AND NOW**, this **24th** day of **January, 2008**, and upon due consideration of both (a) the Motion For Order Determining Automatic Stay Ineffective As To Movant, If Applicable, Or In The Alternative, For Relief From The Automatic Stay (the "Relief From Stay Motion") having been filed by Housing Authority of Beaver County (the "Housing Authority"), and (b) the Motion for Contempt for Violation of the Automatic Stay filed by the Debtor, Sheri M. Alberts, and with due consideration of the record made by the parties in these proceedings and for the reasons set forth more fully in the Memorandum Opinion issued contemporaneously herewith, the Court hereby ORDERS, ADJUDGES and

DECREES that:

1. The Motion for Relief From Stay is DENIED; and

2. The Motion for Contempt for Violation of the Automatic Stay is DENIED insofar as monetary sanctions will not be issued against the Housing Authority for its violation of the automatic stay. The Court also sees no need to disrupt the record of the state court proceedings at this time, and thus denies, without prejudice, the Debtor's request to declare the state court proceedings void.

Dated:     January 24, 2008          /s/ Jeffery A. Deller
                                     Jeffery A. Deller
                                     United States Bankruptcy Judge

CASE ADMINISTRATOR TO MAIL:

cc:   Ronda J. Winnecour, Esq., Chapter 13 Trustee
      Kimberly Motley Phillips, Esq., Counsel to the Debtor
      Eileen D. Yacknin, Esq., Counsel to the Debtor
      Daniel L. Haller, Esq., Counsel to the Debtor
      Mark A. Lindsay, Esq., Counsel to Housing Authority Of Beaver County